F. C. BROSSIER AND G. D. BROSSIER, CO-PARTNERS, DOING
BUSINESS AS F. C. BROSSIER AND SON; T. V. MOORE, F.
M. HUDSON AND FIDELITY BANK & TRUST COMPANY, A
CORPORATION, *Appellants*, v. BRIGHAM REALTY & INVEST-
MENT COMPANY, A CORPORATION, AND MURRAY E. BRIG-
HAM AND HATTIE R. BRIGHAM, *Appellees*.

Division B.

Opinion Filed November 21, 1924.

Petition for Rehearing Denied January 26, 1925.

Where real estate is conveyed to a trustee pursuant to a con-
tract that the land is to be subdivided into lots and blocks
and sold exclusively by parties to the contract who are de-
signated as "the agents," for stated commissions on sales
with ultimate participations in profits, the said parties with
other parties to the contract to advance stated amounts to
the owner of the land and for the promotion of sales, and
the second and third parties comply at least in substantial
part with the contract so as to acquire substantial rights
in the premises, but default in making proper accountings,
&c., a decree cancelling the contract and the conveyance to
the trustee on the showing disclosed by the record, will be
reversed and the cause remanded that proper accounting
may be enforced, the trial court also having ample power
to compel full observance of the fiduciary relations of the
parties.

An Appeal from the Circuit Court for Dade County;
H. F. Atkinson, Judge.

Reversed.

*R. B. Gautier, Hudson & Cason* and *F. T. Myers*, for
Appellants.

*Fred Botts, H. H. Eyles* and *H. P. Branning,* for Appellees.

WHITFIELD, P. J.—A bill in equity was filed for an accounting under and a cancellation of the following contract and trust deed concerning real estate:

"This indenture, made and entered into this 20th day of December, Nineteen Hundred and Nineteen, by and between The Brigham Realty and Investment Company and Murray E. Brigham and Hattie R. Brigham, parties of the first part; F. C. Brossier & Son, parties of the second part, and T. V. Moore and F. M. Hudson, parties of the third part, witnesseth:

"The first parties are to convey to the Fidelity Bank & Trust Company as trustees the following described lands lying in Dade County, Florida, to-wit:

The northwest quarter of the northwest quarter of the southwest quarter and the south half of the northwest quarter of the southwest quarter of section three, and the northeast quarter of the southeast quarter of section four, all in Township 54 South, Range 41 East.

"The first parties being the owners of the lands above described and the Brigham Realty and Investment Company having heretofore executed and delivered a mortgage now of record in Dade County, Florida, in Mortgage Book 70, page 282, which will be hereinafter referred to as the mortgage, and having entered into an agreement with the Fidelity Mortgage and Guarantee Company and the Fidelity Bank and Trust Company, now of record in Dade County, Florida, in Deed Book 71 at page 181, which agreement will be hereinafter referred to as the development contract, the said first parties hereby agree that they will procure from the said Fidelity Mortgage and Guarantee Company and the said Fidelity Bank and Trust Com-

pany modifications of the said mortgage and the said development contract in the following respect:

"1.   An agreement that so much of the said land as is embraced in the said mortgage shall be wholly released from the lien of the said mortgage upon payment to the mortgagee of the sum of Twenty-five Thousand Dollars ($25,000.00) and interest from this date;

"2.   And that the said land may be subdivided into lots and blocks, said subdivision to contain at least two hundred (200) lots, and that any lot of the said subdivision fronting on Twelfth Street extension shall be released from the lien of said mortgage on payment of Two Hundred and Fifty Dollars ($250.00), and that any other lot in the said subdivision shall be released from the lien of the said mortgage on payment of the sum of One Hundred and Twenty-five Dollars ($125.00).

"3.   Or that so much of the lands as is embraced in the said mortgage shall, on demand of the second and third parties to this agreement, be leased from the lien of the said mortgage upon a new mortgage being given upon said portion for Twenty-five Thousand Dollars ($25,000.00) or so much of that amount as may remain due when the said mortgage shall be given.

"4.   That so much of the said property as is embraced in the said development contract shall be entirely released from the provisions of the said development contract.

"5.   That the property above described may be replatted and be subdivided and developed in accordance with the terms of this contract, and that the name of the subdivision may be changed at the discretion of the second and third parties to this contract.

"After the modifications above prescribed shall have been secured the land first above described is to be surveyed, subdivided, platted, developed and put on the mar-

ket, and the said parties are to undertake the sale of said land when so subdivided at prices to be fixed by the said second parties, no lot to be sold, however, for less than Four Hundred Dollars.

"The Brigham Realty and Investment Company agrees that it will pay the interest on the mortgage above mentioned as it falls due, and protect the second and third parties against any default in the performance of the obligations of the said mortgage.

"The second and third parties are to advance to the first parties Ten Thousand Dollars ($10,000.00) on their conveyance of said land to the said trustee, and the second and third parties are to furnish Five Thousand Dollars ($5,000.00) which is to be paid to the said trustee and held by him as a separate fund, which will be hereinafter referred to as the promotion fund, to be used as hereinafter provided.

"The second and third parties are to receive as commissions ten per cent of all returns from sale of the said lands, said commission to be paid in cash out of the first payment on each sale. The balance remaining after the deduction of commissions will be hereinafter referred to as the proceeds of sales.

"The proceeds of sales shall be applied as follows:

"1.    The sum of Twenty Thousand Dollars ($20,000.00), or so much thereof as may be necessary, shall from time to time be reserved from the proceeds and set apart as a separate fund to be known as the development fund.

"2.    Thereafter the next Ten Thousand Dollars ($10,000.00) of returns from sales shall be paid to the second and third parties to repay the advance of that amount hereinafter provided for.

"3.    Thereafter the next Twenty Thousand Dollars ($20,000.00) of the returns from sales shall be divided

one-half to the first parties and one-half to the second and third parties.

"4. Thereafter the next Seventy Thousand Dollars ($70,000.00) of returns from sales shall be divided thirteen-fourteenths to the first parties and one-fourteenth to the second and third parties.

"5. Thereafter all returns from sales shall be divided one-fourth to the first parties and three-fourths to the second and third parties.

"All divisions of returns from sales between the said parties, as provided for in paragraphs numbered 3, 4, 5 and 6 above shall be made as the money is collected, unless the parties shall agree on a division of the purchase money notes and contracts.

"The second parties shall be responsible for the collection of all funds due from the purchasers of the said property, and shall once each week account for and pay over, according to the terms of this contract, all funds so collected.

"The Brigham Realty and Investment Company agrees to provide an ample plant and to supply water for domestic uses in the said subdivision, at rates not to exceed the rates from time to time charged in the City of Miami, but it is understood that the Brigham Realty and Investment Company shall not be required to lay mains further than that point on Twelfth Street where Twelfth Street would be intersected by Grapeland Boulevard produced north, and that the mains throughout the said subdivision shall be paid for out of the promotion and development funds.

"All engineering expenses, legal expenses, advertising and promoting expenses, and all other expenses connected with the development, improvement and sale of the said property, except commissions, shall be paid out of the

promotion fund until it is exhausted, and thereafter out of the development fund.

"The true intent and meaning of this instrument is to provide that the second and third parties are to pay Five Thousand Dollars ($5,000.00) towards the cost and expenses connected with the development and sale of the said lands, which amount is not to be repaid to them except out of their part of the profits, and that the first parties are to receive Seventy Thousands Dollars ($70,000.00) for the said land. The balance remaining after payment of said costs and expenses and the payment to the parties of the first part for the cost of the land is to be treated as profits which are to be ultimately divided one-fourth to the first parties and three-fourths to the second and third parties."

"This Indenture, made this 20th day of December, A. D. 1919, between the Brigham Realty and Investment Company, a corporation, and Murray E. Brigham and Hattie R. Brigham, his wife, of the County of Dade, in the State of Florida, parties of the first part, and Fidelity Bank & Trust Company, a corporation, as trustee for the purposes hereinafter set out, party of the second part.

"Witnesseth, That the said parties of the first part for and in consideration of the sum of Ten Dollars and other good and valuable consideration, to them in hand paid by the party of the second part, and receipt whereof is hereby acknowledged, have granted, bargained and sold to the said party of the second part, its successors and assigns forever, the following described land, situate, lying and being in the County of Dade and State for Florida, to-wit:

"The northwest quarter of the northwest quarter of the southwest quarter and the south half of the northwest quarter of the southwest quarter of section three, and the northeast quarter of the southeast quarter of section four, all in Township 54 South, Range 41 East.

"And the said parties of the first part do hereby fully warrant the title to said land, and will defend the same against the lawful claims of all persons whomsoever.

"The purposes of this trust are as follows:

"Said land is to be subdivided, platted and put on the market by F. C. Brossier and Son, hereinafter called the agents, who shall have the exclusive sale of the land so subdivided, and said agents are to make and execute contracts of sale of lands in the said subdivision at prices to be fixed by them, no lot to be sold, however, for less than Four Hundred Dollars. The said trustee is to recognize and carry out all contracts of the said agents and make conveyance in accordance therewith, on demand of F. C. Brossier & Son.

"Any and all deeds, conveyances, contracts, mortgages and agreements with reference to said lands which may be made by the said trustee shall be fully binding, absolute and effectual to convey good title to the same extent as if the said trustee were the absolute owner thereof, and the beneficiaries shall be as fully bound as if they had joined in any such instrument as may be executed by the trustee.

"The trustee is not to be responsible for the collection of any purchase money for any of the said property, its duty being merely to hold and convey title by special warranty deed."

The bill of complaint contains allegations of breaches of the contract by the second and third parties thereto, that it is contended have been sustained by the evidence and warrant a cancellation of the contract and a reconveyance to complainants of the portions of the property not sold to other parties under the contract and an accounting in full.

The defendants acquiesce in the prayer for an accounting but resist the demand for a cancellation of the contract

and trust deed and a reconveyance of the property to the complainants.

The decree rendered is as follows:

"This cause came on to be finally heard upon the pleadings and evidence on file therein. After argument of counsel and being advised in the premises, the court finds that the equities in said cause are in the complainants and that they are entitled to the relief therein prayed.

"The Court further finds that the defendants, F. C. Brossier and Son, became the agents of the complainants under and by virtue of a certain contract dated the 20th day of December, 1919, entered into by and between the complainants and the defendants which said agency was based upon a valuable consideration, and that the complainants had the right to revoke the same under the facts stated in the bill of complaint and shown by the evidence.

"The Court further finds that the complainants are entitled to an accounting for all sums of money received and expended by the defendants under the said contract. The Court further finds that certain lots of land described in the bill of complaint have been lawfully sold by the defendants, F. C. Brossier and Son as agents for the complainants under the said contract, and that the rights of the purchasers of said property should be protected but that all of the real property described in the bill of complaint remaining unsold should be restored to the complainants as the lawful owners thereof. The Court further finds that the amount of the Development Fund consisting of Five Thousand Dollars paid in by the defendants at the time of the execution and delivery of the said contract and the further sum of Twenty Thousand Dollars derived from the sale of all lots embraced within the plat of 'Central Park' aggregating the sum of Twenty-five Thousand Dollars has been properly expended by the defendants in the

development of the subdivision and in the accounting, that said sum of Twenty Thousand Dollars together with lawful commissions retained by the defendants, F. C. Brossier and Son should be credited against the amount realized from the sale of the lots. The Court further finds that the remaining sum arising from sales of the property should be distributed in accordance with the terms of the said contract without reference to the division of assets made under the agreement of the ninth day of March, 1921.

"Whereupon, it is Ordered, Adjudged and Decreed that the contract of the 20th day of December, 1919, made and entered into by and between the parties to this suit, be and the same is hereby cancelled and set aside, and that all rights and interest of the defendants in the properties described in said contract be, and they are hereby terminated.

"It is further Ordered, Adjudged and Decreed that the defendants account to the complainants for all sums of money received and disbursed by them pursuant to said contract and to this end, that this cause be referred back to the Special Master in Chancery for the purpose of stating the account.

"It is further Ordered, Adjudged and Decreed that upon the stating of said account and its approval by the Court that the defendants pay to the complainants the sum or sums, if any, shown to be due by the defendants to the complainants on account of the sales of property under the contract aforesaid; that the defendants, F. C. Brossier and Son, F. M. Hudson and T. V. Moore be, and they are hereby perpetually enjoined and restrained from selling, contracting to sell or in any manner disposing of all or any portion of the real property remaining unsold embraced within the subdivisions known as 'Central Park' as well as all other lands described in the said contract.

"It is further Ordered, Adjudged and Decreed that the Miami Bank & Trust Company as substitute trustee for the Fidelity Bank & Trust Company forthwith convey to the complainants, Brigham Realty & Investment Company, a corporation, and Murray E. Brigham and Hattie E. Brigham, by a good and sufficient deed, all and singular the lands described in the bill of complaint remaining unsold, the legal title whereof being now vested in the said substitute trustee; and upon its failure to do so that this order shall stand in lieu of such deed and thereupon and thereafter, the legal title in and to said land shall be vested in the complainants in the same manner and to like effect as though such deed had been made, executed and delivered.

"It is further Ordered, Adjudged and Decreed that all deeds and contracts made, executed and delivered by the trustee and the defendant, F. C. Brossier and Son, to the purchasers of all or any of the lots embraced in the said subdivision be, and they are hereby approved and confirmed."

The defendants appealed and assigned as error the decree above quoted.

The Court found that the contract is one of "agency based on a valuable consideration" and further "that the complainants had the right to revoke the same under the facts stated in the bill of complaint and shown by the evidence."

The trust deed conveyed the fee simple title to lands of the complainants to the Fidelity Bank & Trust Company as trustee for the purpose of being "subdivided, platted and put on the market by F. C. Brossier and Son, hereinafter called the agents, who shall have the exclusive sale of the land—at prices to be fixed by them, no lot to be sold—for less than Four Hundred Dollars," the trustee to

make conveyances under the contracts binding on complainants.

The contract provides that the parties of the first part, the complainants, shall procure the release of the lands from a mortgage to be paid by complainants; that the second and third parties to the contract are to advance to complainants $10,000.00 "on their conveyance of said land to the said trustee;" that the second and third parties are to furnish $5,000.00 as a "promotion fund" to be paid only out of their share of the profits; that the second and third parties are to receive as commissions ten per cent of all returns from sales; that the balance of the proceeds of sales shall be applied (1) in setting apart a "development fund" of $20,000.00; then (2) $10,000.00 shall be paid to second and third parties for that amount advanced by them to complainants; then (3) proceeds to be divided between the parties to the contract as therein provided.

Whatever may be the correct legal classification and definition of the power of sale conferred by the contract and trust deed upon "the agents," Brossier & Son, such agency is not a mere power to sell that may be revoked by complainants without sufficient cause by reason of breaches that affect the substance of the contract.

A breach complained of relates to the creation of the "promotion fund" of $5,000.00 and the "development fund" of $20,000.00 required by the contract. But this is met by the specific finding in the decree, upon supporting evidence, "that the amount of the Development Fund consisting of Five Thousand Dollars paid in by the defendants at the time of the execution and delivery of the said contract and the further sum of Twenty Thousand Dollars derived from the sale of lots aggregating the sum of Twenty-five Thousand Dollars has been properly expended

by the defendants in the development of the subdivision and in the accounting.''

Other charges as to over payments for commissions on sales, ''unnecessary discounting of a great many of the notes'' that were taken for sales of lots, unauthorized payments, etc., go more directly to an improper accounting between the sales agents and the complainants which may be remedied upon demand or by appropriate judicial procedure, such defect not warranting revocation of the contract at this time in the absence at least of a strong showing of bad faith or of intentional wrong doing, there being no suggestion that the accounting parties are not entirely responsible financially, with present ability to respond to strict requirements for prompt, full, just and accurate accounting and payments under the contract. An accounting does not appear to be resisted. The court has ample power to require a full observance of the fiduciary relations of the parties. But cancellation of the contract at this time on the showing made does not appear to be equitable in view of the rights and obligations of the several parties under the contract.

In so far as the decree orders cancellation and reconveyance, it is reversed, with directions to proceed with an accounting and with power to make such decrees as may be warranted by evidence to be taken under the principles of law herein stated.

It is so ordered.

WEST AND TERRELL, J. J., concur.

TAYLOR, C. J., AND ELLIS AND BROWNE, J. J., concur in the opinion.